May it please the court. My name is Manuel Araujo. I am the attorney for the appellant, Mr. Zhang. I'd like to start by trying to outline the two or three areas that I think are of most significance. First of all, the issue of economic benefit. Secondly, whether or not Marvell, in the context of this case, took reasonable measures to protect its trade secrets in the situation where it is distributing those trade secrets to a third party. And thirdly, the court's ruling on the objection that I made to the document created three years after the fact to prove that my client had signed an invention agreement which contained terms similar to the nondisclosure agreement. In a situation where the person who testified did not personally see the document signed, was not familiar with Mr. Zhang's signature, never spoke to him about having signed the document, and claims to have relied upon viewing the document when she was compiling these documents. First of all, with regards to the economic benefit, I think this is the only case of the United States v. Jin, G-I-N, which the government relies on, that I am aware of, where there is no evidence, no affirmative evidence, that Mr. Zhang did anything to try to take advantage of the documents. In fact, in this case, there's no evidence he offered to sell the documents. There is no evidence that he used the documents while employed at Broadcom. There is no evidence that he used them. There's one document that was used. Yes. So what you just said is not literally true. Well, you're right. And I was going to get to that exception. Okay. And that is also the document which Judge White acquitted him because he found that the purpose for using that document was wholly unrelated to the other information on the document that arguably was, in fact, a trade secret that is the current that these different ships operated at. And Judge White found, because we put on affirmative evidence through Mr. Coffey, that, in fact, the current information about currency was irrelevant to the discussion. It had provided no economic or any sort of advantage to Broadcom. The discussion dealt with the voltage, which is a public information. You can find it at any trade manual. In fact, we introduced trade manuals to prove that this information was, in fact, publicly available. Could I go back to your first point and make sure I understand it? Sure. And that is that he didn't get any economic benefit from any of this. Is that – that was your point, right? Well, that's the major point, but not only that, but he did not use it for the advantage or to the advantage of Broadcom, other than that one table that Judge Clifton indicated. And the other thing, in ruling that – in acquitting my client of that particular count, of that table, Judge White himself said presumably if he was intending to injure Marvell, he would have disclosed more information, not just this one sheet out of perhaps 500-page, you know, data sheets. So that in itself indicates that his Honor didn't find that at least in that instance there was an intent to injure Marvell or an intent to economically benefit Broadcom. Now we have a complete absence of any other evidence because he didn't offer to sell. He did not discuss it with any of the Broadcom witnesses, in fact, or persons. In fact, Amy Wong, who used to work for Broadcom, who cooperated with the FBI during their investigation, who admitted that in fact she and others, or certainly others if not she, possessed Marvell documents, which they shouldn't have had, but none of those documents came from my client. And even she, after she – when she was working at Broadcom and worked with Mr. Zhang for a month or so, because she had one function in the company and he had another function, but they corroborated together, she testified that Mr. Zhang never even mentioned that he had these documents. The other thing is that at the inception of this case, there were several assumptions that the government made. The first assumption was – one of the assumptions was that my client had contributed information to the competitive analysis that was circulated at Broadcom on May of 2005. We presented evidence to a computer forensic expert that was uncontradicted and undisputed by any evidence, that in fact my client didn't even as much as open the attachment, which was the competitive spreadsheet, did not add to it, did not modify it, did not reconvey it to anyone. And there was a complete absence of any evidence that he did so informally, such as talking to someone, her supervisor. In fact, there was a stipulation that his supervisor, Soh and Lim, never even saw the documents. So, there is a complete absence of any affirmative action that he was intending to use these documents for the purpose of either injuring Marvell or benefiting Broadcom or benefiting himself. Now, we also get the – The benefiting himself part may be the hard part. And particularly given the standard of review we have for sufficiency of the evidence, how is it that it's not possible for a reasonable fact finder to conclude that he did this for his own benefit, given that it's hard to figure out why else he did it? Well, the – no, it's not hard to figure out why else he did it. The copying and the taking may be a little bit more problematical. But we presented evidence from Ken Rimm, a supervisory engineer at Netgear and e-mails, which set forth the fact that – and the Marvell witnesses, Mr. Hervey in particular, who was the expert, testified that the DX set of files, the MX set of files, the EX set of files, were all relevant – a relevant solution to the chassis. But he'd been working on projects for a long time, and this pattern of behavior surrounding the time he decides to go to work for somebody else is not like his behavior or apparently the behavior of anybody else at Netgear. And so I have – I hear his argument, but I don't know why that makes the fact finder's conclusion that that's not credible or that's not really his motivation. Why isn't the fact finder reasonable in concluding to the contrary? It's not reasonable because if you use that logic, that the mere fact that he downloaded a large amount of documents from that mere fact, you can infer that he intended to benefit economically, not personally, because the statute's very clear. It has to be an economic benefit. And, in fact, the legislative history – Well, he's gathering nuts for the winter. He's gathering information. He might improve his own prospects in the future. He might educate himself to make himself more valuable. There are lots of ways where you want to take advantage of an opportunity you won't have later. And, again, could a reasonable fact finder – why couldn't a reasonable fact finder conclude that was for his future economic advantage? Because that is actually speculation. Just – he might. He might. He might. No, no. It's not speculation. He did it. And the question is, what's his motivation? And like I say, it's hard to figure out a different motivation. You've suggested, well, he was doing it for the current projects he was working on at Netgear. Yeah, maybe, but that's not a real strong argument because he hadn't behaved like that before and he wasn't going to lose access to the documents as long as he was working at Netgear. So why does he suddenly download lots and lots of documents within a few days? Well, but to look at the document – you have to look at it in this context. He had access to literally millions of documents on that extranet, not just these three files, these three set of files. What he downloaded was all relevant to the chassis project, which we proved was, in fact, on the plan of record. And, in fact, it was supposed to be – they were seeking supervisory approval by March 25th and then later got kicked out to April the 8th. The project never occurred. But this is a development project. It's not – we're not – we're not talking about deciding what chips to use in a project that's already been approved. We're talking about planning. But the point is this. When I say that it's speculative, it is speculative as to what his motivation was in the – Well, let me ask you this. Maybe it's an inverse, as I read the judge's opinion. If he makes a determination that he doesn't have any reason to have this information with respect to Netgear, and he makes that determination, he's then saying circumstantially if you have no reason to have it for your job, then the only other reason is that you are taking it for your own benefit, at least under that prong of the statute. So that's what I think the district court was saying. Yes, but I think the district court was wrong, because to do that, you read out the element of economic benefit. Because the legislature – the government must prove that the defendant intended to confer an economic benefit, not an abstract benefit or reputational enhancement. Therefore, a person who discloses trade secrets but who does not intend to gain economy from them cannot be prosecuted under this section. And now, as I indicated, that means that the mere fact that someone downloads a number of documents and takes them, that automatically leads to the inference that he at some point in the undetermined future intended to use them. That's the speculative part. Because what if he just – So, I mean, the way – under your argument, you've got to wait for the open sesame to be opened for economic benefit. So you can steal all kinds of stuff and sit on it, and you can't be prosecuted because you haven't yet affirmatively used it? Is that – No, there has to be – there has to be some other evidence consistent with the theory that he, in fact, intended to use it for his own economic benefit. In fact, the judge indicates that he could have intended to use it at Broadcom. But we know from all the evidence that he never did, except for that one chart, which had nothing to do with a trade secret, that he never actually used it when he had the opportunity, the number of opportunities to use it. So I think that's what I'm going at, is the fact that this makes too wide of a net for liability on the mere fact of downloads. And, in fact, the statute presumes, as I quoted from the language from the legislative history, that there will be circumstances where someone has, in fact, taken trade secrets, whether they stole them or not, because he obtained them legitimately. That's why the first three counts were dismissed by the court under the dissolve rule. The point is that – anyway, that's my main point. I cited the – for example, if a person is, in fact, inebriated, they have the keys to a car. The car is right outside. He gets arrested for being drunk in public. Can he be charged, convicted for drunk driving merely because he may have intended or he may have perhaps decided to drive a car? Well, that's the same thing here. He has documents, but there's no indication that, in fact, he affirms he intended to use them. We're guessing as to what his intent was. Could I just ask you a point of clarification? Sure. Just remind me, under the California law, on the Federal crime on trade secret, you have to have the intent to convert for economic benefit. Under the regular uniform trade secret aspect, which would be a civil – Right. Economic benefit is not required? It's not. Right. Okay. The other thing, lastly, in terms of the reasonable measures, you cannot have reasonable measures by Marvell when all they did was have an NDA signed by the executive, no follow-up. They never requested a list of people. They never requested a signed copies of the equivalent documents. They never did any audits. They never did anything. They just hear a sign, and then they abandoned any sort of supervision or overview. They never even asked Netgear, what procedures do you have in place? Send us a copy of your – the similar agreement, even if it's not signed by Mr. Jock. Send us a copy so we can determine whether or not it meets our needs to protect our property. None of that ever happened. The only time it happened was when my client was shortly after or before he was arrested when they found out that he had gone to – or the executives found out, the other people already knew, that he was going to a competitor. That's when they did an audit. But they never did an audit before that. I'm going to reserve 40 seconds before rebuttal. Thank you. May it please the Court. I am Shani Ellison, and I represent the United States in this appeal. I'd like to start by addressing the defendant's knowledge and intent. The following undisputed facts establish that the defendant had the knowledge and intent required by the statute. The defendant's position at Netgear, the timing of his downloads,  the quantity of documents he downloaded, the fact that he took those documents with him when he went to Marvell's fierce competitor, and his subsequent statements to the FBI. I'd like to unpack a little bit how those facts and others demonstrate that the defendant intended to convert the trade secrets for the economic benefit of someone other than Marvell. As an initial matter, the evidence demonstrates that the defendant did not download these documents in the course of his Netgear responsibilities. Instead, he downloaded them within a few days of accepting a job with Marvell's fierce competitor. He downloaded seven times as many documents as anyone else at Netgear downloaded that month combined, and more than twice as many documents as he had downloaded in his entire career at Netgear. Furthermore, he proceeded to take these documents with him when he went to work at Marvell's fierce competitor. And within two days of starting work at that job, he uploaded the documents to his new work computer. Was there any evidence as to whether he had a separate computer? Yes. I believe he told the FBI. When the FBI was executing the search warrant, there were several computers in the house, and he identified which computer was which. And I think, I believe there was a computer for his wife. I think there was a personal computer that he identified as being his own computer, and then he identified this particular laptop as being his Broadcom laptop or his Broadcom-issued laptop. And during the execution of that warrant, he also made statements to the FBI that indicated what he intended to do with the documents. Although he initially claimed he had downloaded the documents in furtherance of his work at Netgear, once he was confronted by the fact that the FBI agents had spoken to his former colleagues and had learned from them that that was not the case. What are you giving us now? Are you telling us this all amounts to evidence of intent to convert? Yes. This all amounts to evidence of his intent to convert for the economic benefit of someone other than Marvell. So in essence, this evidence together, particularly his subsequent statements to the FBI, where he acknowledged after being confronted with the contrary statements of his former colleagues, he said, in fact, that he had taken these documents for engineering curiosity, and he acknowledged that they would help him at his work in Broadcom. And in fact, his behavior at Broadcom confirms that that was his intent for this collection of documents because he had already circulated a portion of one of the documents to his colleagues there. Was there any testimony that whatever was in these files was economically beneficial to Broadcom? Well, there was extensive testimony about the fact that these trade secrets derived independent value from not being publicly known, and the defendant has not seriously disputed that evidence. Well, that's not the same thing as evidence that it's valuable to Broadcom, is it? Well, the evidence showed that Broadcom and Marvell were fierce competitors and that the documents related to products that Broadcom also made that were similar to products that Broadcom also had in the market and products that the defendant ultimately ended up working on. And was there evidence that these were things about which Broadcom had no knowledge? By virtue of the fact that they were trade secrets. No, no. I could think something's a trade secret, but maybe he knows about it already. No. There was evidence that these were not generally known and not generally available to the public. And so, yes, this was trade secret information in that respect. Aside from the document, which we know was shared or sent to Broadcom people, but which the district court declined to find the basis for a conviction, was there evidence of any particular information from this set of documents that was shared with other people at Broadcom? There was no evidence of that. And that's because of the fact that the FBI interceded quickly in this case. The defendant's downloading pattern was so unusual that it caught the attention of Marvell pretty quickly, and so the investigation began quickly. And the search warrants in this case were executed, I think, within about two months of when the defendant started at Broadcom. So there, you know, he, although he had already consulted these documents and circulated one of them within Broadcom, he had not fully actualized their value yet, so that this was a case of successful government intervention. I'd also like to address the reasonable measures. Well, then we have to mean the main challenge that I heard during your colleague's argument was that there's not sufficient evidence of intent because there's not evidence that rules out the possibility that he was doing it for his engineering curiosity. What evidence was there that he wasn't doing it just because he was interested in the subject matter himself? Well, the fact that he downloaded the documents to his Broadcom computer rather than his personal computer, for example. Maybe it was a better computer. Possibly, although there's nothing in the record to suggest that. And I think the fact that he did distribute one of these documents to his colleagues at Broadcom, but furthermore, you know, as an initial matter in a sufficiency case, the burden is difficult for the defendant because this Court has to draw inferences in favor of the verdict. But even if this Court were to go in the other direction and credit the defendant's claim that he had been consulting these documents for engineering curiosity, that still demonstrates that he was intending to convert them for the economic benefit of someone other than Broadcom. He was intending to convert them for his own economic benefit because he was, by trade, an engineer, and if he wanted to review these documents for engineering curiosity, it would make him a better engineer, and he acknowledged as much to the FBI. He said that these documents would help him in his career at Broadcom. So taken together, the evidence is there's substantial evidence that the defendant in fact intended to convert these documents for the economic benefit of someone other than Marvell. I'd like to move to the reasonable measures requirement also. Marvell took extensive measures to protect these documents from public disclosure, including by requiring nondisclosure agreements, by imposing extensive restrictions on extranet documents, and by putting markings on documents, including confidentiality markings and watermarking technology. Is that an issue that goes to the jury, how much effort went into protecting the secret? Yes. One of the requirements for proving that something is a trade secret is that the owner of the trade secret took reasonable measures to protect the secrecy of the information. In this case, it was a bench trial, but, yes, in a jury trial, this element would go to the jury. And the evidence was more than sufficient to establish this fact here. In fact, Marvell had a reputation for being particularly stingy with sharing its information with its customers. And there was evidence that customers were in fact frustrated about how difficult it was to get access to Marvell information that they needed in order to work properly with Marvell products. We outline the measures that Marvell took in our brief in great detail, but I'm happy to answer additional questions on that element if the Court has them. And unless the Court has questions about the public trial issue or the admissibility of the spreadsheet, I'm happy to submit on the briefs on those issues. Thank you. Thank you very much. We ask the Court to affirm. You've used up all your time, but I'm going to give you two minutes for a rebuttal because it's hard to say anything in 41 seconds. All right. Thank you, Your Honor. I appreciate it. With regards to Judge Tashima's question, whether or not Broadcom already had this information, they certainly had some of the information because we know there was a treasure trove of Marvell documents that were in fact seized by the FBI from Broadcom. What information they had and didn't have, I have no idea because that was never parsed out during the trial itself. Although the documents, some of the documents were in fact introduced and certainly the general that were discussed. The other thing is that in terms of the case law is very clear. This is sort of a moving target in terms of reasonable measures. It's not enough for Marvell to have set up a very elaborate scheme as to its employees. In fact, every case that I've seen that I've reviewed has dealt with the reasonable measures in the context of the company's employees, not in terms of a vendor or an end user. In this case, it would be Netgear. So the fact that Marvell set up, you know, had gates and had codes to get into the place and had all these other issues with regards to their employees is completely irrelevant to whether under the circumstances of this case or whether or not that was sufficient. As I indicated at the very end, Marvell never followed up with regards to anything that Netgear was doing, didn't require exit interviews, which is a base standard. I think everyone knows that. That didn't occur here because Netgear had no procedures in place and Marvell never took any action to apprise itself of whether or not Netgear was in fact taking actions to protect its intellectual property. So I think based on that, in the context of this case and who we're dealing with, they did not take reasonable measures to protect its intellectual property. Putting stuff on the extranet is much different from giving your employees access where you have certain controls. Thank you, Your Honor. Thank you. Thank both counsel for your argument this morning. The case of United States v. Zung is submitted.
judges: TASHIMA, McKEOWN, CLIFTON